IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JOHN H. WADE**                                                                                 **PLAINTIFF**

**v.**                            **CIVIL ACTION NO. 2:24-cv-196-TBM-RPM**

**NATIONAL COLLEGIATE ATHLETIC**
**ASSOCIATION**                                                  **DEFENDANT**

## ORDER

Late this afternoon, Plaintiff John H. Wade, III filed motions seeking immediate injunctive relief. Wade attempts to enjoin the National Collegiate Athletic Association ("NCAA") from enforcing its Five-Year and related wavier Bylaws and its Junior College Eligibility Limitation Bylaws. Wade alleges that these rules, which would prevent him from playing another year of college basketball, violate Section 1 of the Sherman Antitrust Act.

For the reasons set forth below, Wade's Motion for Temporary Restraining Order and Preliminary Injunction [3] is denied in part. More specifically, Wade's request for an *ex parte* temporary restraining order is denied. That motion is taken under advisement in all other respects.

Additionally, Wade's Urgent and Necessitous Motion [7] is granted in part and denied in part. Wade's request for an *ex parte* temporary restraining order is denied, but to the extent that Wade requests expedited consideration and adjudication of his request for a preliminary injunction, the Court is prepared to set an expedited briefing schedule and hearing.

### I. BACKGROUND

In this action against the NCAA, Plaintiff John H. Wade alleges antitrust violations under the Sherman Act and the Clayton Act. *See* 15 U.S.C. § 1; 15 U.S.C. § 26. Specifically, Wade alleges that NCAA Bylaws 12.02.6, 12.8, and 14.3.3 unjustifiably restrain the ability of college athletes to

play NCAA Division 1 sports and accordingly, to earn money via name, image, and likeness ("NIL") benefits. On December 23, 2024, Wade filed the present Motion for Temporary Restraining Order and Preliminary Injunction [3], accompanied by a Motion [7] seeking "immediate consideration and adjudication of the Motion for Temporary Restraining Order *ex parte*." [7], pg. 2.

Wade is a member of the Southern Miss Golden Eagles basketball team, joining the team via the transfer portal. [4], pg. 10. Southern Miss is the fifth postsecondary institution that Wade has attended, but only the fourth school for which he has played basketball. *Id.* at 11. He attended the University of California, Davis, from 2018-19, but was not a member of the basketball team there. *Id.* He played his first season of basketball at Contra Costa College, a junior college. *Id.* After that team's 2020-21 season was cancelled due to the COVID-19 pandemic, Wade played a second season at Contra Costa from 2021-22. *Id.* He then transferred to California State, Northridge, a Division I school. *Id.* Although a member of the 2022-23 team there, Wade received a medical hardship waiver, meaning that this season did not count against his eligibility. *Id.* Wade then transferred to California State, Stanislaus, a Division II school, where he competed during the 2023-24 season. *Id.* Subsequently, Wade transferred again and signed to play the 2024-25 season at Southern Miss. *Id.*

Subject to NCAA Bylaw 12.8, also known as the "Five-Year Rule," a student-athlete has five years during which to play four seasons of a given sport. *Id.* at pg. 7. The five-year clock starts to run on the date when the student-athlete registers as a full-time student. *Id.* Even with the NCAA's decision in 2020 to provide athletes with a sixth year in which to complete five years of

2

competition due to the COVID-19 pandemic,[1] Wade's six years presumably ran in September of 2024, six years after he enrolled at UC Davis in fall 2018.[2]

On July 23, 2024, the NCAA denied Wade's request for an eligibility extension waiver. [4], pg. 10. Southern Miss appealed. *Id.* at 11. On October 25, 2024, the NCAA upheld its decision because Wade had not been denied two years of participation opportunities beyond his control. *Id.* Wade then appealed on November 17, 2024. *Id.* On December 3, 2024, the NCAA cancelled the request for reconsideration, leaving in place its denial of Wade's request. *Id.* As a result, Wade filed this lawsuit on December 20, 2024. [1] He now seeks an *ex parte* temporary restraining order and a preliminary injunction to stop the NCAA from enforcing its rules. [3]; [7].

## II. DISCUSSION & ANALYSIS

A temporary restraining order is a mechanism for affording relief for a limited time, when immediate and irreparable injury, loss, or damage will result to the movant before a party can be heard in opposition. *See Esparza v. Bd. of Trustees*, 182 F.3d 915, 1999 WL 423109, at *2 (5th Cir. 1999) (citing FED. R. CIV. P. 65(b)). "Similarly, *the purpose of a temporary restraining order is to preserve the status quo* and prevent irreparable harm, but only until the court can hold an adversarial hearing for a preliminary injunction." *Sanders v. Fitch*, No. 1:23-cv-105-MPM-RP, 2023 WL 7782922, at *1 (N.D. Miss. Nov. 15, 2023) (emphasis added) (citing FED. R. CIV. P. 65(b)(3); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda*

---

[1] *DI Council extends eligibility for winter sport student-athletes*, NCAA.ORG (published 10/14/2020), https://www.ncaa.org/news/2020/10/14/di-council-extends-eligibility-for-winter-sport-student-athletes.aspx

[2] Under Rule 12.8.1.7.1.2 of the NCAA Bylaws, a student's five-year clock begins to run whether he plays a sport during that school year or not. "Circumstances that are considered to be within the control of the student-athlete or the institution and cause a participation opportunity to be used include . . . [a] student-athlete's decision to attend an institution that does not sponsor the student-athlete's sport, or decides not to participate at an institution that does sponsor the sport[.]" NCAA Bylaws 12.8.1.7.1.2(a).

3

*County*, 415 U.S. 423, 438-439, 94 S.Ct. 1113 (1974)). A temporary restraining order may be granted *ex parte*, but such are disfavored and seldomly granted. *Id.* (citing Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 65, Practice Commentary); *Evans v. Hall*, No. 4:20-cv-140-NBB-JMV, 2020 WL 5899422, at *1 (N.D. Miss. Oct. 5, 2020).

As the movant, Wade must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (quotation omitted); *see Hassani v. Napolitano*, No. Civ. A. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (finding that "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," and the movant must establish the same four elements for obtaining a preliminary injunction).[3] "When a party moves for a temporary restraining order or preliminary injunction, the burden of proof is a heavy one." *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 788 (S.D. Miss. 2011); *Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 303 (5th Cir. 1982) ("The plaintiff bears the burden of persuasion on all four elements.").

Rather than protecting the status quo, Wade's motion for temporary restraining order seeks to establish it. The Court begins its analysis of whether Wade is entitled to a temporary

---

[3] Southern Miss' basketball season is now close to halfway complete. Even if this Court were to rule in Wade's favor today, there is a possibility that the Fifth Circuit could not afford appellate relief to the NCAA in time. And in that case, this Court's decision would be final. Therefore, the Court notes that this case may fall into the category of those requiring more than a likelihood of success on the merits. *See Romer v. Green Point Sav. Bank*, 27 F.3d 12, 16 (2nd Cir. 1994) ("When a district court's order, albeit in the form of a TRO or preliminary injunction, will finally dispose of the matter in dispute, it is not sufficient for the order to be based on a likelihood of success or balance of hardships . . . the district court's decision *must be correct* (insofar as possible on what may be an incomplete record.") (emphasis added).

restraining order by briefly discussing the *Pavia* case out of the Middle District of Tennessee. *Pavia v. National College Athletic Ass'n*, No. 3:24-cv-1336, 2024 WL 5159888 (M.D. Tenn. Dec. 18, 2024).

Diego Pavia, a transfer to Vanderbilt University who had prior stops at the New Mexico Military Academy, a junior college, and New Mexico State University, led Vanderbilt to historic success during the 2024-25 season. *Id.* at *4. Vanderbilt earned its first ever win over a number-one-ranked team when it upset Alabama, and it will play in its first bowl game since 2018. *Id.* As a result, Pavia won Southeastern Conference ("SEC") Newcomer of the Year.[4] Pavia would have been out of eligibility because of Rule 12.02.6 of the NCAA bylaws, which counts time spent at a junior college against a player's eligibility. *Id.* at 3-4. Pavia, who estimated that he would earn over $1 million in NIL compensation for the 2025-26 college football season, sought an additional year of eligibility. *Id.* at 4-5. In early November of 2024, Pavia filed his lawsuit against the NCAA. After a hearing in December of 2024, with counsel for the NCAA present, the Middle District of Tennessee very recently granted Pavia's preliminary injunction. *Id.* at 11 n. 9. This Court points out, however, that prior to granting Pavia's preliminary injunction, the Middle District of Tennessee denied his request for an *ex parte* temporary restraining order in November. *See Pavia*, No. 3:24-cv-1336, Docket No. 15 (M.D. Tenn. Nov. 12, 2024). "Given that Plaintiff has almost certainly been aware of the challenged bylaws and his ineligibility to play college football in the 2025-26 season for quite some time and has been discussing possible resolution with the NCAA, the Court is not persuaded that an *ex parte* order is justified." *Id.*

---

[4] Wakai, Brad, *Vanderbilt Star Diego Pavia Named SEC Co-Newcomer of the Year*, SPORTS ILLUSTRATED (published Dec. 11, 2024), https://www.si.com/college/vanderbilt/football/vanderbilt-star-diego-pavia-named-sec-co-newcomer-of-the-year.

This Court agrees with that reasoning. Wade's dispute with the NCAA over his eligibility for the 2024-25 basketball season dates back to at least July. [4], pg. 10. Given that this dispute with the NCAA has been ongoing, it would be improper for this Court to grant an *ex parte* order without giving the NCAA an opportunity to be heard. And where the Middle District of Tennessee did not find that the status quo should be changed or that Pavia's risk of irreparable harm justified an *ex parte* temporary restraining order, Wade falls even shorter of meeting those burdens. Again, as noted before, it is Wade who is seeking to change the status quo.

Also, Pavia is the starting quarterback at an SEC program with the potential to earn over $1 million in NIL money. While Wade cites Southern Miss' upcoming game against William Carey on December 30, Wade does not allege that he has or is likely to be part of the starting five on the Southern Miss basketball team, play during the team's games, have a leadership role on the team, or generate any specific NIL income. [7], pg. 2. Contrast that with Pavia, who estimates that he can generate over $1 million and is the starting quarterback on an SEC football team. Wade does not even list which position on the basketball court he plays, much less what specific amount of NIL income that he is potentially missing out on. Absent more, the Court cannot see how an *ex parte* temporary restraining order would be necessary to change the status quo when it is not clear from the record that Wade would even garner playing time or what amount of NIL compensation Wade could receive.

And as for any irreparable harm that Wade has experienced due to delay, such delay can reasonably be attributed, at least partially, to him. Wade argues that this lawsuit was filed after December 3, 2024, when his administrative remedies were exhausted by the NCAA. [4], pg. 11. But Wade does not put forward any law that requires a plaintiff to exhaust the administrative

6

remedies of the NCAA (a non-governmental entity) as a prerequisite to bring an antitrust suit. *See Midland Telecasting Co. v. Midessa Television Co.*, 617 F.2d 1141, 1149 (5th Cir. 1980) (holding that there is no requirement that an antitrust plaintiff exhaust administrative remedies as a prerequisite to bringing an antitrust suit). Indeed, numerous plaintiffs—including Pavia—have historically filed antitrust suits against the NCAA at the time they believed they were harmed. Here, the NCAA denied Wade's waiver for the 2024-25 season on July 23, 2024. [4], pg. 10. Wade does not explain why he could not have filed suit at that time, ostensibly before his six-year clock (due to the extra COVID year) had run. But he waited until this late date—20 days after exhausting his remedies with the NCAA, months after his six-year clock ran, and 12 games into Southern Miss basketball's season—to file this emergency motion in this Court. The Court therefore notes that to at least some extent, Wade is partially to blame for this being an emergency in the first place.

### III. CONCLUSION

In sum, Wade's request for an *ex parte* temporary restraining order is denied. But the Court is prepared to set an expedited briefing schedule and hearing on the request for preliminary injunction, but will first give the parties an opportunity to propose a schedule. After counsel for Defendant enters an appearance, the Court is also amenable to holding a telephone status conference should the parties so request. Plaintiff shall provide Defendant a copy of this Order.

IT IS THEREFORE ORDERED AND ADJUDGED that John Wade's Motion for an *ex parte* Temporary Restraining Order and Preliminary Injunction [3] is DENIED in part. The *ex parte* relief is denied, and all other aspects of the motion are taken under advisement.

IT IS FURTHER ORDERED AND ADJUDGED that John Wade's Urgent and Necessitous Motion [7] is GRANTED in part and DENIED in part.

THIS, the 23rd day of December, 2024.

                                              TAYLOR B. McNEEL
                                              UNITED STATES DISTRICT JUDGE